UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE SUBPOENA DUCES TECUM            MISCELLANEOUS CASE
ISSUED TO ALLIANT INSURANCE
SERVICES, INC.            NUMBER: 18-3041

           SECTION: "A"(5)

**<u>ORDER & REASONS</u>**

### I. PROCEDURAL BACKGROUND

This miscellaneous matter arises out of a Rule 45 subpoena duces tecum issued to non-party, Alliant Insurance Services, Inc. ("Alliant") in case No. 17-CV-7604, entitled "*McLaughlin v. BancorpSouth Insurance Services, Inc.*" The Defendant in that case, BancorpSouth Insurance Services, Inc. (BXSI"), issued the subject subpoena to Alliant – the current employer of Plaintiff, Scott McLaughlin ("McLaughlin"), seeking production of a wide variety of documents related to Alliant's recruitment and hiring of McLaughlin.

When Alliant objected to producing documents pursuant to the subpoena, BXSI initiated a miscellaneous action by filing a motion to compel[1] in the Middle District of Louisiana (where compliance with the subpoena was commanded). That Court granted the parties' consent motion to transfer the matter to this Court. (Rec. docs. 8-10).

This Court held a hearing on BXSI's motion and, as reflected in its minute entry dated March 28, 2018, ordered the production of certain documents to BXSI and ordered the

---

[1] Rec. doc. 1.

submission of others to the Court for *in camera* review. (Rec. doc. 24) (the "March 28 Order"). Most pertinent here, the Court ordered the following:

> In addition, within 14 days, Alliant is to provide the Court and BancorpSouth with a privilege log identifying any and all communications involving McLaughlin made between Fowler Rodriguez and Alliant and/or any Alliant personnel that pre-date McLaughlin's resignation date. Upon receipt of that log, the Court will notify counsel for both parties whether it will order any documents identified on the log to be produced for *in camera review*.

(Rec. doc. 24, p. 2).

In response to the foregoing directive, Alliant submitted a privilege log listing 17 documents said to be subject to the attorney-client privilege and/or the work product privileges. Following review of that log, the Court ordered the production of the 17 documents for *in camera* review. (Rec. doc. 25). Alliant provided those documents on April 9, 2018, along with a cover letter that included the statement "So far we have uncovered no communications amongst Alliant employees (i.e. where Fowler Rodriguez was not a party) that may contain privileged information, but Alliant has not completed the search of all the potential e-custodians and hopes to complete this exercise by this week." (Rec. doc. 28-2, p. 1).

On April 16, 2018, counsel for Alliant provided four additional documents said to have been inadvertently omitted from production, bringing the total documents produced for *in camera* inspection to 21.

Subsequently (and unknown to the Court), counsel for Alliant provided counsel for BXSI another privilege log pertaining to some 90 additional documents involving internal Alliant communications concerning McLaughlin. (Rec. doc. 29). Counsel for BXSI then provided that log to the Court, apparently over Alliant's objection, stating in his cover letter

that "[w]e have conferred with counsel for Alliant and they have taken the position that this log was not requested by the Court and it is inappropriate to share this log with Judge North. However, BXSI disagrees and gave Alliant's counsel the opportunity to provide the log to the Court and they declined." (*Id.* (cover letter of Parker Kilgore)).

Upon receipt of the log from BXSI, and believing that it was, indeed, responsive to the March 28 Order, the Court issued a Rule to Show Cause directing counsel for Alliant to appear and show cause why they and/or Alliant should not be held in contempt of the Court's March 28 Order. (Rec. doc. 26). The Court also ordered Alliant to produce the 90 documents described in the log for *in camera* review. (*Id.*). Alliant promptly produced the documents for *in camera* review and filed a response to the show-cause order. (Rec. doc. 27). BXSI filed a response of its own (rec. doc. 28) and the show-cause hearing went forward on May 16, 2018.

## II. ANALYSIS OF THE ISSUES

### A. Whether Alliant and/or its Counsel Violated the March 28 Order

Explaining why it failed to produce the most recent privilege log to the Court, Alliant states in its response to the Court's show-cause order that "[i]n sum, Alliant did not produce this log to the Court because it was not covered by the Court's Order." (Rec. doc. 27 at p. 4). In reply, BXSI offers "[t]here is no credible argument that the documents listed on the April 22 log are not responsive to BXSI's subpoena request, as modified by this Court in its Order compelling the production of responsive documents or their identification on a privilege log if not produced." (Rec. doc. 28 at p. 3).

3

Alliant appears to argue that the language the Court employed in its minute entry did not speak to internal Alliant communications that did not involve counsel's law firm: "The second log at issue does not contain any communications with Fowler Rodriguez (nor does it contain internal Alliant communications *that pass along communications from Fowler Rodriguez*). (Rec. doc. 27 at p. 2)(emphasis added). But the Court's minute entry says nothing about "passing along" communications; it called for production of a log "identifying any and all communications involving McLaughlin made between Fowler Rodriguez and Alliant and/or any Alliant personnel that pre-date McLaughlin's resignation date." (Rec. doc. 24 at p. 2).

The Court is mystified by counsel for Allient's alleged confusion. In counsel's cover letter transmitting the original 17 documents for *in camera* review, he specifically informs the Court: "So far we have uncovered no communications *amongst Alliant employees (i.e. where Fowler Rodriguez was not a party)* that may contain privileged information, but Alliant has not completed the search of all the potential e-custodians and *hopes to complete this exercise by this week*." (Rec. doc. 28-2)(emphasis added). The 90 documents produced pursuant to the Court's show-cause order are *exactly* those described in the foregoing sentence – internal Alliant communications about McLaughlin where Fowler Rodriguez was not a party.

Alliant's apparently newfound position that it did not owe this log to the Court pursuant to the March 28 Order begs two straightforward questions: If the log and attendant documents were not responsive to the minute entry, why was counsel conducting an ongoing search for them *and* informing the Court of that ongoing search and its results to date? Counsel's answers to these questions at the show-cause hearing were less than satisfying;

4

suffice to say that counsel professed a different understanding of the meaning of the Court's order than what the Court intended.

While it has been it has been clear from the outset that the documents described in the most recent log are responsive to the Court's March 28 Order and that the 90-document log provided to BXSI by Alliant should have been produced to the Court no later than April 11, 2018, the Court credits counsel's explanation for the late production and declines to sanction Alliant or its counsel for violating its March 28 Order. The documents were located and the log was produced to BXSI and, notwithstanding Alliant's objection to BXSI's sharing the documents with the Court, the Court now has them and has reviewed them. The Court does not believe that BXSI has been prejudiced by the lateness of the production. As explained in open court at the hearing, however, Alliant and its counsel are admonished that any additional deficiencies or efforts to shield otherwise discoverable documents or information with specious privilege claims will be met with serious consequences.

### B. The Law – Attorney-Client Privilege

In this diversity case, Alliant's claims of attorney-client privilege are governed by Louisiana law. *See Exxon Corp. v. St. Paul Fire & Marine Ins.*, 903 F.Supp. 1007, 1008–09 (E.D. La. 1995). Article 506(B) of the Louisiana Code of Evidence describes the attorney-client privilege under Louisiana law:

> A. **General rule of privilege.** A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is:

5

>  (1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer.
>
>  (2) Between the lawyer and a representative of the lawyer.
>
>  (3) By the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party concerning a matter of common interest.
>
>  (4) Between representatives of the client or between the client and a representative of the client.
>
>  (5) Among lawyers and their representatives representing the same client.
>
>  (6) Between representatives of the client's lawyer.

It is axiomatic that the proponent of the privilege bears the burden of establishing its applicability. *In re Vioxx Products Liab. Litig.*, 501 F.Supp.2d 789, 799 n. 15 (E.D. La. 2007).

   *C.  Claims of Privilege over the First Production (Documents 1-21)*

As noted earlier, Alliant initially submitted to the Court a privilege log describing 17 documents, later supplementing it with a log describing an additional four documents (Documents 1-21). The Court ordered the production of every document described on those two logs and has conducted an *in camera* review of them. Based on that review, the Court finds that each of the 21 documents is indeed privileged and will not order them to be produced.[2]

Before moving to a discussion of the remaining documents reviewed by the Court, an observation about the first 21 documents is important here. Every one of the documents

---

[2] Alliant made claims of work-product protection over certain of these documents. Given the Court's decision that they are all protected by the attorney-client privilege, it need not evaluate or discuss the work-product claims.

save two (nos. 16 and 17) involve direct communications between Ken Zak ("Zak"), described as "Head of Legal" at Alliant by counsel, and either outside counsel with Fowler Rodriguez or internal Alliant personnel regarding McLaughlin's recruitment and hiring.[3] In every case, the communication either comes from Zak directly or is addressed to him directly (as opposed to Zak merely being included as a "cc" recipient). It is clear to the Court that these communications fall squarely under the protection of the attorney-client privilege, as they are communications between attorney and client made for the purpose of facilitating the rendition of professional legal services to the client. *See* La. Code Evid. Art. 506(B). As will be seen, however, these documents evidencing Zak's direct involvement stand in stark contrast to most, if not all, of the internal Alliant communications from the more recent production.

### D. Claims of Privilege over the Second Production (Documents 1-90)

Upon receipt of Alliant's second privilege log from BXSI, the Court ordered the 90 documents described therein to be submitted for *in camera* review. The Court has concluded that review.

The documents in Alliant's most recent log can be divided into two categories: documents that Alliant claims are "Confidential/Proprietary" and those it claims are "Privileged." According to the log itself, the only privilege claimed as to these documents is attorney-client privilege. The Court will analyze these two groups of documents separately.

---

[3] Documents 16 and 17 do not include Zak, but are direct communications between outside counsel and other Alliant management concerning McLaughlin.

1. <u>Claims that Documents are "Confidential/Proprietary"</u>

As a general matter, the Court finds that if a document designated as "Confidential/Proprietary" is relevant to the claims or defenses in this case, it should be produced, subject to the protective order issued by this Court on October 24, 2017 in the low-numbered underlying case No. 17-CV-7604. (Rec. doc. 38 in 17-CV-7604). That case involves the recruitment and hiring of McLaughlin by Alliant, including the timing of those events and both the prospective and actual terms of his employment. All of the documents in the second production touch upon these issues in some way and the Court finds that most of them contain information relevant to the claims and/or defenses in the case. Such relevant documents cannot be protected from disclosure by Alliant's vague – and often inaccurate – claims in its log that they reveal, for instance, "confidential trade secrets as to how it examines candidates and different markets it is examining" when the *specific candidate at issue is McLaughlin* who, it should be remembered, initiated this litigation when he filed suit against BXSI immediately after he left the company.

However, some of these "Confidential" documents *also* contain irrelevant information, particularly about other recruits, that should remain confidential and that BXSI has no need for. These documents are described as "pipeline reports" and they list certain candidates for employment along with information about each of them in a spreadsheet. Accordingly, and as described in more detail below, the Court will order redacted versions of those particular documents to be produced by Alliant.

The following "pipeline reports" will be produced by Alliant with all information redacted except information and entries directly pertaining to McLaughlin: **Nos. 3, 5, 7, 10, 12, 14, 35, and 76.** The following report will be produced with all information redacted except information and entries directly pertaining to McLaughlin and candidate David McKenzie[4] and with the comments in the "Comments/Status" column for McLaughlin also redacted: **No. 80.** Finally, the following report will be produced with all information redacted except information and entries directly pertaining to McLaughlin and Mr. McKenzie: **No. 83**.

The following documents listed as "Confidential/Proprietary" will be produced without redaction subject to the standing protective order in case No. 17-CV-7604. (Rec. doc. 38 in 17-CV-7604): **Nos. 16, 20, 21, 29, 30, 31, 32, 41, 45, 51, 63, 64, 87, and 88**.

### 2. Claims that Documents are "Privileged"

As noted above, the remaining documents listed in the subject log are said to be "privileged" and the only privilege invoked on that log is attorney-client privilege. The Court has reviewed all of these documents and finds that certain documents are not privileged and should be produced.

There is one important point the Court makes as to many of these documents. Many of them are emails that include the word "privileged" in the subject line and carbon copy Zak, the "Head of Legal" who was discussed above. Merely calling something privileged is insufficient to carry the day when the document itself contains none of the indicia of a privileged communication. Moreover, merely copying a lawyer *as a matter of routine* is

---

[4] McKenzie was another BXSI employee.

likewise insufficient to establish the attorney-client privilege when it is apparent from the face of the document that the lawyer is merely receiving it for informational purposes.[5]

Internal documents among personnel managers that are "carbon copied" to in-house counsel for informational purposes rather than for legal advice are not privileged. *See, e.g., Hasty v. Lockheed Martin Corp.*, No. 98-CV-1950, 1999 WL 600322 at *2 (E.D. La. Aug. 6, 1999)(citing *U.S. Postal Service v. Phelps Dodge Refining Corp.*, 852 F.Supp. 156 (E.D. N.Y. 1994))("the mere fact that a communication is made directly to an attorney, or an attorney is copied on a memorandum, does not mean that the communication is necessarily privileged. The information-holder's motive for the communication, to the extent that it can be discerned from the document, thus is an important consideration. 'If the information-holder will communicate with the attorney even if the privilege does not exist, or if a non-legal objective is sufficient to stimulate communication with the attorney, then there is no reason for the privilege to attach.'"); *see also Simon v. G.D. Searle and Co.*, 816 F.2d 397, 402-03 (8th Cir.), *cert. denied*, 484 U.S. 917, 108 S.Ct. 268 (1987).

The Court has examined each of these documents that describe themselves privileged in the subject line and that include Zak as a carbon-copy recipient and has determined that many are not privileged and should be produced, as reflected in this chart:

| Document Number | Reason(s) |
|---|---|
| 18 | There is nothing in the document evidencing "legal review" of anything, as claimed on the log. |
| 19 | The description in the log is inaccurate. The document consists only of the signed departure protocol, which has already been produced. |
| 22 | There is no privileged information in the document. |
| 23 | There is no privileged information in the document. |
| 25 | This draft offer letter to McLaughlin is not privileged. |

---

[5] Or perhaps, as the Court suspects in this case, to serve as a totem to bolster a subsequent privilege claim.

| | |
|---|---|
| 26 | Nothing in this email seeks or gives legal advice; it is not privileged. |
| 27 | This unsigned employment agreement (which was likely already produced) is not privileged. |
| 36 | Nothing in this email seeks or gives legal advice; it is not privileged. |
| 45 | This document, that Alliant claims is privileged, is identical in all material respects to documents 45 and 64, which Alliant claim are "Confidential/Proprietary" but not privileged. The document is not privileged. |
| 60 | This document is a non-privileged draft employment agreement. Alliant's privilege description of the document in the log is grossly misleading. |
| 67 | This draft offer letter to McLaughlin is not privileged. |
| 69 | This document is a non-privileged draft employment agreement. Alliant's privilege description of the document in the log is grossly misleading. |

## III. CONCLUSION

For the reasons set forth above, Alliant shall produce to BXSI the documents enumerated above no later than **May 24, 2018** and shall provide to the Court a declaration by counsel that the production ordered herein has been accomplished.

New Orleans, Louisiana, this 17th day of May, 2018.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE